UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | **OPINION & ORDER** |
| -against- | : | 26-cr-108 (DLI) |
| | : | |
| JOSHUA NASS, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On June 26, 2026, Defendant Joshua Nass ("Defendant") filed an omnibus pretrial motion seeking: (1) to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(1) ("Rule 12"); (2) a bill of particulars pursuant to Fed. R. Crim. P. 7(f) ("Rule 7); and (3) discovery pursuant to Fed. R. Crim. P. 16 ("Rule 16") and *Brady v. Maryland*, 373 U.S. 83 (1963). *See*, Def.'s Omnibus Mot., Dkt. Entry No. 40; Mem. in Support, Dkt. Entry No. 41 (collectively, "Def.'s Mot."). The Government opposed the motion. *See*, Opp'n to Mot. ("Opp'n"), Dkt. Entry No. 45. Defendant replied. *See*, Reply, Dkt. Entry No. 50. For the reasons set forth below, Defendant's omnibus motion is denied.

## BACKGROUND

Familiarity with the facts and procedural history of this case is presumed, and only those facts relevant to the disposition of the motion are repeated herein. It is well settled that "[i]n evaluating a motion to dismiss the indictment, a court must accept the facts alleged in the indictment as true and determine only whether the indictment is valid on its face." *United States v. Full Play Group, S.A.*, 2021 WL 5038765, at *4 (E.D.N.Y. Oct. 29, 2021) (internal quotation marks, alterations omitted).

The following facts are drawn from the indictment filed on April 22, 2026. *See*, Indictment, Dkt. Entry No. 28. Where Defendant's motion "necessarily implicate[s] facts beyond the confines

of the . . . indictment," the Court will "consider facts extrinsic to the indictment." *See*, *United States v. Greenberg*, 2022 WL 827304, at *1 (S.D.N.Y. Mar. 9, 2022) (citing *United States v. Cuervelo*, 949 F.2d 559, 567 (2d Cir. 1991); *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997)).

On March 13, 2026, the Honorable Taryn A. Merkl, United States Magistrate Judge ("USMJ") of this district, endorsed a criminal complaint charging Defendant with attempting to obstruct interstate commerce by extortion, and issued a warrant for his arrest. *See*, Compl., Dkt. Entry No. 1; Arrest Warrant, Dkt. Entry No. 2. Defendant was arraigned before the Honorable Clay H. Kaminsky, USMJ of this district, and released on bond. *See*, Minute Entry dated Mar. 14, 2026.

On April 22, 2026, a grand jury in this district returned a six-count indictment charging Defendant with: (1) attempted Hobbs Act extortion, 18 U.S.C. § 1951(a) (Count One); (2) three violations of 18 U.S.C. § 1952(a)(3)(A) (the "Travel Act") (Counts Two, Three, and Six); (3) cyberstalking, 18 U.S.C. §§ 2261(b)(5), 2261A(2)(B) (Count Four); and (4) interstate stalking 18 U.S.C. §§ 2261(b)(5), 2261A(1)(B) (Count Five). *See*, Indictment. The indictment alleges that between December 2025 and March 2026, Defendant knowingly and intentionally enlisted the services of an individual who, unbeknownst to him, was a government cooperating witness ("CW") with the intent to extort a former business client and his family into paying a debt owed to Defendant by his former client. *Id.*; *See also*, Compl., Dkt. Entry No. 1 at ¶¶ 3-12. Defendant was arraigned on the indictment before the Honorable Laura K. Eshkenazi, USMJ of this district, on April 29, 2026, and entered a plea of not guilty to the entire indictment. *See*, Minute Entry, Dkt. Entry No. 30.

Defendant now seeks: (1) dismissal of: (a) all six counts on the ground that he cannot be liable for aiding and abetting a government agent, (b) Count Two on the ground that the

Government manufactured federal jurisdiction, and (c) Counts Four and Five as legally insufficient and as unconstitutional in violation of the First and Fifth Amendments; (2) a bill of particulars with respect to Counts Two, Three, and Six, which reference various New York Penal Law ("NYPL") statutes; and (3) additional discovery regarding the Government's failed attempts to record two conversations between Defendant and a CW that took place on January 13 and January 29, 2026. *See generally*, Def.'s Mot. The Government opposes contending that: (1) the indictment properly pleads each count in the indictment, and Defendant's constitutional challenges are unripe and lack merit; (2) Defendant is not entitled to a bill of particulars; and (3) Defendant is not entitled to the discovery he seeks pursuant to Rule 16 and *Brady*. *See generally*, Opp'n.

## DISCUSSION

### I. Motion to Dismiss

#### A. Legal Standard

Pursuant to Federal Rule of Criminal Procedure ("Rule") 12(b)(3)(B)(v), a defendant may move to dismiss an indictment for "failure to state an offense." *See*, *United States v. Ahmed*, 94 F. Supp.3d 394, 404 (E.D.N.Y. 2015) ("In other words, Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds.") (citing *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012)). Under Rule 12, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

"However, a defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Greenberg*, 2022 WL 827304, at *6; *See also*,

*Stringer*, 730 F.3d at 124 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (cleaned up). An indictment is not required to set out "all the evidence the government might wish to present at trial." *United States v. Hwa*, 161 F.4th 127, 140 (2d Cir. 2025). "Nevertheless, 'a charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged.'" *United States v. O'Sullivan*, 2021 WL 1979074, at *2 (E.D.N.Y. May 18, 2021) (quoting *United States v. Benitez-Dominguez*, 440 F. Supp.3d 202, 205 (E.D.N.Y. 2020)).

### B. Aiding and Abetting Liability

Defendant moves to dismiss all six counts of the indictment on the ground that the Government has "represented that its theory in this case . . . is predicated on aiding and abetting liability," and a criminal defendant cannot be liable for aiding and abetting a government agent. *See*, Def.'s Mot. at 5-6. Defendant contends that aiding and abetting liability pursuant to 18 U.S.C. § 2 only attaches where another individual successfully completed the criminal conduct as a principal. *See*, Reply at 4. As a government cooperator cannot be guilty as a principal, Defendant asserts that he cannot be found guilty for aiding and abetting the Government's CW as a matter of law. *See*, Def.'s Mot. at 6-7; Reply at 6.

The Government counters that: (1) Defendant is charged in each count both as a principal and as an aider-and-abettor because he engaged in conduct that violated the relevant statutes and enlisted others to take actions that would have violated the relevant statutes had he performed those actions himself; (2) courts routinely allow defendants to be charged with attempting to aid and abet a crime; and (3) Defendant's argument is an attack on the sufficiency of the evidence, which is improper on a motion to dismiss the indictment. *See*, Opp'n at 8-12.

18 U.S.C. § 2 provides that "whoever 'aids, abets, . . . commands, induces or procures' the commission of a federal offense, or 'willfully causes an act to be done[,] which if directly performed by him' would be a federal offense, 'is punishable as a principal.'" *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (citing 18 U.S.C. § 2(a) and (b)). "An indictment charging aiding and abetting may be proven by demonstrating that the aider and abettor was in fact a principal, . . . and one who aids and abets the commission of a crime is not only punishable as a principal but is a principal." *United States v. Stringer*, 2012 WL 11269, at *11 (S.D.N.Y. Jan. 3, 2012) (citing *United States v. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1994); *United States v. Oates*, 560 F.2d 45, 55 (2d Cir. 1977)).

Defendant's argument fails as to Count One because Count One is an attempt charge. Section 1951 proscribes both extortion and attempted extortion. *See*, 18 U.S.C. § 1951(a). As with all attempt crimes, the Government need only establish that Defendant took a substantial step toward completing the substantive crime. *See*, *United States v. Cain*, 671 F.3d 271, 279 (2d Cir. 2012). Thus, it is irrelevant whether the Government's CW could be a guilty principal, because completion of the underlying extortion is not an element of attempted Hobbs Act extortion. *See*, *United States v. Parker*, 165 F. Supp.2d 431, 469-70 (W.D.N.Y. 2001) ("[A] defendant is guilty of an attempt despite the fact that his accomplice is an undercover agent who does not intend to commit the underlying crime."). As the Court in *Parker* explained, that the CW had no intention to commit the underlying crime merely is a "factual impossibility" that was unknown to Defendant. *Parker*, 165 F. Supp.2d at 469-70. While the CW's lack of intent does "prevent[] completion of the [underlying] crime," it "does not exonerate [Defendant] as a principal or as an aider and abettor in the alleged attempt to violate" § 1951(a). *Parker*, 165 F. Supp.2d at 469-70.

Defendant's contention that Count One is a double inchoate offense obfuscates the indictment, and the cases he cites are inapposite. *See*, Reply at 3. In both *United States v.*

*Meacham* and *United States v. Cabello*, the Fifth Circuit held that 21 U.S.C. §§ 846 and 963 did not authorize "conspiracy-to-attempt" crimes. 626 F.2d 503, 508-509 (5th Cir. 1980); 33 F.4th 281, 287 (5th Cir. 2022). Here, however, the Government does not allege a "double inchoate" offense based on conspiracy. It is black letter law in this Circuit that aiding and abetting is not a distinct crime and merely describes the defendant's role in the underlying offense. *See*, *United States v. Cole*, 158 F.4th 113, 126 n.11 (2d Cir. 2025); *United States v. Delgado*, 972 F.3d 63, 74-75 (2d Cir. 2020). Thus, the indictment does not charge Defendant with attempting to aid and abet attempted extortion, but attempted extortion under an aiding and abetting theory of liability.

Defendant's argument also fails as to Counts Two through Six. As the Government makes clear in its opposition, the indictment charges Defendant both as a principal and as an aider and abettor. *See*, Opp'n at 8. Thus, even if Defendant is correct that he cannot aid and abet a cooperating witness, that he also is charged as a principal precludes dismissal of Counts Two through Six.

Defendant's assertion that he cannot be liable for aiding and abetting a government cooperating witness is incorrect, and his reliance on *United States v. Jordan* is misplaced.[1] *See*, Def.'s Mot. at 6 (citing 927 F.2d 53,55 (2d Cir. 1991)). In *Jordan*, the Second Circuit rejected the argument that a defendant could not be liable under § 2 where a government agent was involved:

> Section 2(b) provides that one who willfully causes an act to be done that would be an offense if done by him is punishable as a principal. Batton is thus liable for the importation as she would have been if she had physically carried the heroin from Thailand to New York. . . The fact that the undercover agent was willing to be used as the instrument of her criminal activity, in order to apprehend her and her confederates, does not detract in any way from her criminal responsibility. . . Since the law quite properly recognizes her

[1] Defendant's motion cites to *United States v. Barnes*, but the quote that Defendant attributes to that case does not appear anywhere in the written opinion. *See*, Def.'s Mot. at 6 (citing *United States v. Barnes*, 604 F.2d 121, 161 (2d Cir. 1979)). Notwithstanding, *Barnes* dealt with conspiracy liability and, thus, is not relevant to this case.

> liability for the offense of importation, which [defendant] does not challenge, we see no reason why he should not be equally responsible for aiding and abetting her in the commission of the offense.

*Jordan*, 927 F.2d at 55 (internal quotation marks and citations omitted). The Second Circuit explicitly recognized that Batton, the "causer," was liable under § 2(b) for causing a government agent to commit the crime of importing heroin, notwithstanding that the government agent herself could not be guilty for the offense. *Id.* at 55. The Court goes on to explain that the defendant, Jordan, also was liable for aiding and abetting Batton's actions. *Id.* at 55-56 (citing *Pereira v. United States*, 347 U.S. 1, 74 (1954)). Thus, under *Jordan*, the presence of an undercover agent has no bearing on a defendant's potential liability under § 2. *Id.* ("The causer is punishable as a principal for willful action that brings about an offense.").

Moreover, Defendant's reaching contention that the Government somehow has confined itself to § 2(a) is belied by the plain text of the indictment. Nowhere in the five-page indictment does the Government specify that Defendant is charged with aiding and abetting solely under § 2(a). Each count of the indictment lists the substantive statute as well as 18 U.S.C. § 2. *See*, Indictment. The Court declines to read this as limiting the Government to § 2(a), especially given that the Government does not need to plead § 2 in the indictment. *See*, *United States v. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1994) (holding that all substantive charges "implicitly carry an 18 U.S.C. § 2 charge"); *United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994) (same); *United States v. Eisner*, 59 Fed. App'x 379, 382 (2d Cir. 2003) (same). What the Government may have represented to defense counsel in a private meeting is not relevant, as the Court's review on a Rule 12 motion to dismiss the indictment strictly is confined to the face of the indictment. *See*, *United States v. Paldiel*, 2025 WL 524659, at *3 (E.D.N.Y. Feb. 18, 2025); *United States v. Wahab*, 2022 WL 17581560, at *2 (S.D.N.Y. Dec. 12, 2022) ("When evaluating the sufficiency

of an indictment on a motion to dismiss, the Court should not look beyond the face of the indictment.") (internal quotation marks omitted).

Finally, Defendant's argument that the indictment is legally insufficient because it does not specify which conduct the grand jury relied on to charge Defendant as a principal and which conduct it relied on to charge Defendant as an aider and abettor also is meritless. *See*, Reply at 2. As Defendant appears to acknowledge in a footnote, this argument is improper on a Rule 12 motion to dismiss and should be raised in a request for a bill of particulars. Accordingly, Defendant's motion to dismiss all six counts of the indictment on the basis of improper aiding and abetting liability is denied.

### C. "Manufactured" Federal Jurisdiction

Defendant also moves to dismiss Count Two on the ground that all the alleged interstate cellular communications were with a government cooperator, and, thus, the Government improperly "manufactured" federal jurisdiction. *See*, Def.'s Mot. at 9. The Government counters that Defendant's argument is an evidentiary challenge that is "inappropriately addressed on a pretrial motion to dismiss." *See*, Opp'n at 12.

Defendant primarily relies on *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973). In *Archer*, federal law enforcement agents devised a complex undercover sting operation with the goal of exposing corruption in the New York criminal justice system. *Id.* at 672. After arranging for an undercover agent to be arrested and charged in state court, a second undercover agent approached a local prosecutor and began negotiating a bribe. *Id.* at 672-73. Federal agents then traveled to Newark, New Jersey for "the sole purpose of having [the defendant] talk in an interstate telephone call," and supplied out-of-state phone numbers at which the undercover agents could be reached. *Id.* at 674. Ultimately, the Second Circuit held that these calls could not support a Travel Act conviction because Congress did not intend § 1952(a)(3) to "include cases where the federal

officers themselves supplied the interstate element and acted to ensure that an interstate element would be present." *Id.* at 681.

Defendant's application of *Archer* is premature at best. The Second Circuit's decision in *Archer* came after the conclusion of trial, and it is well established in this Circuit that it is improper for a court to weigh the sufficiency of the evidence on a pretrial motion to dismiss the indictment. *See*, *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021) ("At the indictment stage, we do not evaluate the adequacy of the facts. . . . That is something we do after trial. Otherwise, we would effectively be asking district courts to engage in summary judgment proceedings—something that does not exist in federal criminal procedure.") (internal quotation marks and citations omitted).

Nevertheless, Defendant contends that the issue "fundamentally [is] a question of law" ripe for decision because the "government's own charging documents clarify that the interstate calls contemplated in the Indictment are solely with the government's [CW]." *See*, Reply at 7. However, the "precedential force" of *Archer* is limited. *See*, *United States v. Wallace*, 85 F.3d 1063, 1067 (2d Cir. 1996). Indeed, subsequent courts narrowed the applicability of *Archer*'s "manufactured jurisdiction" doctrine to exclude instances where "there is any link between the federal element and a voluntary, affirmative act of the defendant." *Id.* at 1066.

Drawing all reasonable inferences in the Government's favor, the Court cannot conclude at this juncture that the alleged calls in Count Two solely were manufactured by the Government for the purpose of creating a federal element, and that Defendant did not act voluntarily so as to implicate the federal element. It is the Government's burden to demonstrate the jurisdictional element to the jury, and Defendant can challenge the sufficiency of the Government's evidence at trial, not on a pretrial motion to dismiss. Accordingly, Defendant's motion to dismiss Count Two is denied.

### D. Interstate Stalking, Cyberstalking

Defendant also seeks to dismiss Counts Four and Five on the grounds that: (1) the "place under surveillance" clause of 18 U.S.C. § 2261A is unconstitutionally vague pursuant to the Fifth Amendment; (2) the indictment fails to state a cause of action for interstate stalking and cyberstalking; and (3) the statute is overbroad both facially and as-applied in violation of the First Amendment. *See*, Def.'s Mot. at 10-11. The Government counters that: (1) Counts Four and Five adequately track the statutory language and are properly pleaded; and (2) Defendant's First and Fifth amendment challenges are premature and, notwithstanding, lack merit. *See*, Opp'n at 16-29.

#### 1. Fifth Amendment Vagueness

Defendant makes both a facial and as-applied Fifth Amendment vagueness challenge to the "place under surveillance" clause of § 2261A. *See*, Def.'s Mot. at 22-26; Reply at 18. A statute is impermissibly vague if it: (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or (2) "makes the law unacceptably vulnerable to arbitrary enforcement." *United States v. Hilliard*, 2022 WL 2803356, at *1 (E.D.N.Y. July 18, 2022) (internal quotation marks and citations omitted). "Therefore, 'all vagueness challenges[,] whether facial or as-applied[,] require an answer [to] two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement.'" *Id.* (quoting *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006)). Generally, courts faced with both as-applied and facial vagueness challenges first should address the as-applied argument "because a facial challenge on vagueness can 'depend upon whether the challenged regulation was constitutional as applied." *Id.*

Defendant appears to contend that § 2261A is vague as applied because the indictment does not contain sufficient factual allegations regarding Defendant's alleged conduct.[2] *See*, Def.'s Mot. at 24. It is well established that as-applied vagueness challenges are premature in a pretrial motion to dismiss the indictment. *See*, *United States v. Raniere*, 384 F. Supp.3d 282, 320 (E.D.N.Y. 2019) ("Raniere must wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in.") (internal quotation marks omitted); *Cf. Russell v. United States*, 2025 WL 552588, at *5 (E.D.N.Y. Feb. 19, 2025) (addressing Fifth Amendment vagueness challenge to § 2261A after trial). Accordingly, Defendant's as-applied vagueness is denied as premature.

Facial vagueness challenges may be considered where, as here, fundamental rights pursuant to the First Amendment are implicated. *See*, *Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir. 2008) (citing *Farrell*, 449 F.3d at 495-96 & n.11). Under the first prong of a facial vagueness challenge, a court must conduct an objective inquiry to determine "whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed, not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Id.* (internal quotation marks omitted) (citing *Copeland v. Vance*, 893 F.3d 101, 114 (2d Cir. 2018)). A scienter requirement in a statute "may mitigate a law's vagueness, especially where the defendant alleges inadequate notice." *Id.*

As to the second facial vagueness prong, "a court should reject such a challenge" where: (1) the statute "as a general matter provides sufficiently clear standards to minimize the risk of arbitrary enforcement[;] or (2) that, even without such standards, the conduct at issue falls within

[2] Defendant's argument also may be construed as attacking the sufficiency of the indictment. This argument is addressed separately below. *See*, Section I.D.3., *infra*.

the core of the statute's prohibition," such that the enforcement against the defendant was not due to "unfettered discretion that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Id.* (internal quotation marks omitted) (citing *Thibodeau v. Portuondo*, 486 F.3d 61, 67-68 (2d Cir. 2007)).

Defendant appears to challenge § 2261A under both facial vagueness prongs, contending that: (1) § 2261A provides no definition for the "place under surveillance" clause, and ordinary people cannot readily define the term "surveillance," (2) the ordinary definition of the term "surveillance" can be construed to capture protected speech under the First Amendment; and (3) the uncertainty in the statute threatens arbitrary and discriminatory enforcement. *See*, Def.'s Mot. at 24-25.

The Government counters that a facial vagueness challenge also is premature at this stage, and, notwithstanding, fails on the merits because: (1) the scienter requirement of § 2261A vitiates any vagueness concerns; (2) the "place under surveillance" clause carries a common, well understood, and generally accepted meaning; and (3) terms of similar or greater breadth in the same statute already have survived similar vagueness challenges. *See*, Opp'n at 29-30.

While the "place under surveillance" clause is not defined and contains some level of ambiguity, the void for vagueness doctrine "does not demand meticulous specificity, recognizing that language is necessarily marked by a degree of imprecision." *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 126 (2d Cir. 2020). "A statutory term is not impermissibly vague simply because it lacks a statutory definition." *United States v. Concepcion*, 139 F.4th 242, 250 (2d Cir. 2025). The presence or absence of a statutory definition "can be a relevant consideration," but a statute's plain meaning, "the use of familiar legal concepts," and "a scienter requirement defeat a vagueness challenge." *Id.*

The Court finds nothing about the "place under surveillance" clause to be so ambiguous as to render it unconstitutionally vague. Circuits that have entertained facial vagueness challenges to other clauses of § 2261A uniformly have rejected them. *See, e.g.*, *United States v. Gonzalez*, 905 F.3d 165, 190 n.10 (3rd Cir. 2018) (rejecting facial vagueness challenge to the terms "harass" and "intimidate"); *United States v. Shrader*, 675 F.3d 300, 310-11 (4th Cir. 2012) (same); *United States v. Conlan*, 786 F.3d 380, 385-86 (5th Cir. 2015) (same); *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) ("Contrary to Osinger's argument, 'harass' and 'substantial emotional distress' are not esoteric or complicated terms devoid of common understanding. . . [The] scienter requirement . . . thoroughly undermines Osinger's contention that he was unable to discern that his harassment of V.B. was proscribed by § 2261A."). Indeed, Defendant's argument that ordinary people cannot readily define the term "surveillance" is belied by the very definition of the term that he includes in his motion. *See*, Def.'s Mot. at 24 ("Surveillance can involve 'close observation or listening of a person or place in the hope of gathering evidence.'") (citing *Surveillance*, Black's Law Dict. (11th ed. 2019)). Notably, contrary to Defendant's contention, the term does not need a concise, single understanding. *See*, *Cuomo*, 970 F.3d at 126.

Moreover, § 2261A contains a scienter element requiring that a defendant "intend to kill, injure, harass, or intimidate another person." 18 U.S.C. § 2261A(1). Contrary to Defendant's assertion, this requirement "dramatically narrow[s] the universe of possible offending activity, which would provide even more notice to an ordinary person as to the conduct that would be actually criminalized under" § 2261A, while additionally limiting the risk of arbitrary and discriminatory enforcement. *Hilliard*, 2022 WL 2803356, at *4; *See also*, *McFadden v. United States*, 576 U.S. 186, 197 (2015) ("Under our precedents, a scienter requirement in a statute alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion.") (cleaned up).

Finally, Defendant's argument that the "place under surveillance" clause impermissibly reaches protected speech only is relevant to his First Amendment overbreadth challenge, not a Fifth Amendment facial vagueness challenge. *See*, Section I.D.3., *infra*. Accordingly, Defendant's motion to dismiss Counts Four and Five as unconstitutionally vague is denied.

2. Failure to State A Cause of Action

Next, Defendant contends that the indictment fails to state a cause of action as to Counts Four and Five. *See*, Def.'s Mot. at 10. Specifically, Defendant argues that: (1) the indictment only can allege attempt crimes as it was impossible to complete the underlying substantive crimes given the involvement of a government cooperator; (2) § 2261A provides for attempt liability only as to the causation element; (3) the indictment fails to allege Defendant engaged in a completed course of conduct; and (4) the indictment fails to allege that Defendant made any "true threats" to the alleged victim. *Id.* The Government counters that: (1) Counts Four and Five do not allege attempts; (2) Defendant conflates the requirements of §§ 2261A(1) and 2261A(2); (3) the indictment sufficiently pleads multiple acts that satisfy the "course of conduct" requirement; (4) cyberstalking pursuant to § 2261A(2) is not limited to "true threats;" and (5) Counts Four and Five properly track the statutory language. *See*, Opp'n at 15-22.

As an initial matter, Defendant's argument that the indictment only can allege attempt crimes is meritless. As explained above, Counts Two through Six plead completed substantive crimes, not attempts. *See*, Section I.B., *supra*. It is immaterial that the alleged underlying extortion was the product of a "sting" operation and is charged separately as an attempt crime. The completion of that substantive crime is not an element of, or a prerequisite for, the interstate stalking or cyberstalking charges in Counts Four and Five. Thus, Defendant's second argument that § 2261A provides for attempt liability only as to the causation element also fails. Defendant's remaining arguments are addressed in turn below.

The elements of an interstate stalking charge pursuant to 18 U.S.C. § 2261A(1) are: (1) the defendant traveled in interstate commerce; (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person; and (3) in the course of, or as a result of such interstate travel, the defendant engaged in conduct that caused, attempted to cause, or would reasonably be expected to cause substantial emotion distress to that person, or a member of his immediate family. *See*, *United States v. McMahon*, 2024 WL 896838, at *14 (E.D.N.Y. Mar. 1, 2024).

The elements of a cyberstalking charge pursuant to 18 U.S.C. § 2261A(2) are: (1) the defendant used an interstate electronic communication service; (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person; (3) the defendant engaged in a course of conduct using the interstate communication service; and (4) the course of conduct did place the intended victim in reasonable fear of the death of, or seriously bodily injury to, the victim himself or a third party (*e.g.*, an immediate family member, spouse, or pet). *See*, *United States v. Mangione*, 818 F. Supp.3d 509, 526 (S.D.N.Y. 2026). A "course of conduct" is a "pattern of conduct composed of two or more acts, evidencing a continuity of purpose." *See*, 18 U.S.C. § 2266(2). The "conduct" and "course of conduct" elements of § 2261A(1) and (2) are materially similar, and a "range of acts" can satisfy either element, "including non-violent acts such as driving to a particular place or placing a telephone call." *Mangione*, 818 F. Supp.3d at 526.

Defendant contends that Counts Four and Five: (1) "shed no light as to what is factually alleged as part of the 'course of conduct'" outside of the alleged date that he traveled from South Carolina to New York; (2) fail to allege any "true threats" that he communicated with the alleged victims, as required by *United States v. Dennis*; and (3) "merely track[] parts of the statutory language." *See*, Def.'s Mot. at 17 (citing 132 F.4th 214 (2d Cir. 2025)). Defendant's arguments

amount to nothing more than an attack on the sufficiency of the evidence, which is improper on a Rule 12 motion to dismiss. *See*, *Dawkins*, 999 F.3d at 780. While the indictment does not include every specific act that Defendant is alleged to have undertaken in his "conduct" or "course of conduct," it is black letter law in the Second Circuit that, at "the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021).

Indeed, Defendant's arguments fail precisely because the indictment tracks the statutory language of § 2261A(1) and (2) and "states the time and place (in approximate terms) of the alleged crime[s]." *See*, *United States v. Ji*, 2022 WL 595259, at *2. The Government "does not purport to make a detailed presentation of the entirety of the evidence, . . . and there is nothing in the statute that requires the facts or acts relating to [Defendant's conduct or] course of conduct be described in the indictment as necessary elements of the crime charged." *Id.*; *See also*, *United States v. Lubienecki*, 2020 WL 7248323, at *3 (W.D.N.Y. Oct. 20, 2020) (discussing 18 U.S.C. § 2261A(2)), *report and recommendation adopted*, 2020 WL 7239872 (W.D.N.Y. Dec. 9, 2020).

To the extent that Defendant relies on the Second Circuit's opinion in *Dennis*, he fails to explain how that case, which exclusively addressed cyberstalking pursuant to § 2261A(2), applies to a § 2261A(1) interstate stalking charge. *See*, *Dennis*, 132 F.4th at 228 (discussing § 2261A(2)). In the absence of any authority suggesting that such an extension is warranted, the Court declines to do so. Moreover, *Dennis* addressed the sufficiency of the evidence adduced at trial, not the legal sufficiency of the indictment. *Id.* at 230-235.

The indictment, as supplemented by discovery that has or will be produced, "provide[s] Defendant with sufficient notice of the allegations" charged against him. *United States v. Ragano*, 740 F. Supp.3d 179, 184 (E.D.N.Y. 2024). Accordingly, Defendant's motion to dismiss Counts Four and Five on this ground is denied.

3. <u>First Amendment Challenge</u>

Finally, Defendant makes both facial and as-applied challenges to the "place under surveillance" clause of § 2261A as overbroad in violation of the First Amendment. *See*, Def.'s Mot. at 26. "Overbreadth and vagueness are different doctrines. A clear and precise enactment may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct." *Farrell*, 449 F.3d at 498-99. To be overbroad, "a statute's overbreadth must be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008) (emphasis in original). "[I]nvalidating *all* enforcement of a challenged law is strong medicine." *United States v. Thompson*, 896 F.3d 155, 162-63 (2d Cir. 2018) (cleaned up). Accordingly, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Defendant contends that the "place under surveillance" clause of § 2261A facially is overbroad because: (1) "a wide range of constitutionally protected activity such as photographing or taking videos of people in public easily falls within the broad wording of the 'surveillance' conduct" charged against him; (2) the terms "harass" and "intimidate" cause § 2261A to capture "a substantial amount of protected speech;" and (3) the Second Circuit limited the "reach of offending communications" to "true threats," but this "limiting principle does not save the 'surveillance' provision" because surveillance necessarily requires the observation or recording of an individual, which is protected speech. *See*, Def.'s Mot. at 26, 28 (citing *Dennis*, 132 F.4th at 228-29). The Government counters that: (1) the statute regulates conduct, not speech; and (2) any speech captured by § 2261A is not protected speech. *See*, Opp'n at 26-29.

Defendant's arguments fail for multiple reasons. First, while the "place under surveillance" clause can be read to capture instances of speech, it easily can be read to capture a

wide swath of conduct that does not implicate speech at all, such as searching for a person's home address or electronically tracking someone in order to stalk them. *See*, *McMahon*, 2024 WL 896838, at *15 ("[T]here was sufficient evidence for the jury to conclude that McMahon had knowledge of the stalking scheme and that he took actions to carry it out, including tracking Xu Jin's elderly father and finally uncovering the address of Xu Jin's Warren home.").

Defendant's argument fundamentally misstates the standard applicable to a First Amendment facial overbreadth claim. The statute's reach must be substantial "relative to the statute's legitimately plain sweep." *Williams*, 553 U.S. at 292. It is for this reason that other courts in this district, as well as every federal circuit faced with the same question, have rejected facial First Amendment overbreadth challenges to § 2261A. *See*, *Russell*, 2025 WL 552588, at *6 (collecting cases). The few, vague examples proffered by Defendant are not persuasive.

Second, *Dennis* is irrelevant to Defendant's facial challenge because the Second Circuit's treatment of § 2261A was cabined to the defendant's as-applied overbreadth challenge. *See*, *Dennis*, 132 F.4th at 226. Indeed, the defendant and the Court in *Dennis* acknowledged that § 2261A(2) "regulates conduct . . . that do[es] not necessarily implicate speech." *Id.* (internal quotation marks omitted).

Third, the Second Circuit did not "write out" the terms "harass" or "intimidate" from § 2261A. In *Dennis*, the only alleged conduct concerned the "*content* of [the defendant's] electronic communications," and the Court clearly stated: "No constitutional concern is present, however, when the government must identify sufficient evidence for a jury to find that a defendant acted with intent to harass or intimidate in a sense that is not protected under the First Amendment, such as by the communication of a true threat." *Id.* at 228 (cleaned up). Thus, when speech is implicated, *Dennis* properly is understood merely as limiting "harass" to criminal harassment, and "intimidate" to true threats or speech integral to a crime, none of which is protected under the First

Amendment. *Id.* (citing *United States v. Yung*, 37 F.4th 70, 80 (3rd Cir. 2022) ("In reading the statute narrowly, we reaffirm our earlier decision upholding the cyberstalking statute. And we join every other circuit that has evaluated the law.") (internal citations omitted) (collecting cases)).

As § 2261A regulates courses of conduct that do not necessarily implicate speech, and its scope appropriately is limited to unprotected speech, the Court declines to find § 2261A overbroad in violation of the First Amendment. *See*, *Hicks*, 539 U.S. at 124; *Dennis*, 132 F.4th at 227 ("[§ 2261A] raises no constitutional concern as to 'well-defined and narrowly limited classes of speech' falling outside the protections of the First Amendment. Such classes 'include, *inter alia*: obscenity, defamation, speech integral to criminal conduct, and true threats.") (cleaned up); *Russell*, 2025 WL 552588, at *6.

If a facial overbreadth challenge fails, application of the law "that violate[s] the First Amendment can still be remedied through as-applied litigation." *Hicks*, 539 U.S. at 124. However, as Defendant readily admits in his motion, "[t]he required analysis . . . is not possible at this time." *See*, Def.'s Mot. at 29. Defendant suggests that the lack of factual allegations leave him to "speculate about what conduct he is alleged to have undertaken." *Id.* Defendant's argument simply repackages his attack on the sufficiency of the evidence, and, as explained above, the indictment need not list every alleged action that Defendant took during the relevant time period.

As there are apparent questions and disputes of fact, Defendant's as-applied challenge is premature. *See*, *Dennis*, 132 F.4th at 230-235 (addressing the defendant's as-applied First Amendment overbreadth challenge after the conclusion of trial); *See also*, *Raniere*, 384 F. Supp.3d at 320 (as-applied vagueness claims were premature before trial). Accordingly, Defendant's motion to dismiss Counts Four and Five of the indictment is denied.

## II. Motion for Bill of Particulars

### A. Legal Standard

A defendant may seek a bill of particulars to enable him to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam). A defendant seeking a bill of particulars has the burden of showing that "the information sought is necessary" and, without it, he "will be prejudiced." *United States v. Shkreli*, 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016). "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Solnin*, 81 F. Supp.3d 193, 209 (E.D.N.Y. 2015) (quoting *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987)).

"[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). It is not a mechanism meant to be used to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories." *United States v. Taylor*, 17 F. Supp.3d 162, 179 (E.D.N.Y. 2014) (quoting *United States v. Muhammad*, 903 F. Supp.2d 132, 137 (E.D.N.Y. 2012)); *Solnin*, 81 F. Supp.3d at 209 ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (internal quotation marks omitted). Moreover, "the wheres, whens and with whoms of a charged offense are beyond the proper scope of a bill of particulars." *United States v. Shteyman*, 2011 WL 2006291, at *5 (internal quotation marks omitted). "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Bortnovsky*, 820 F.2d at 574.

### B. Application

Defendant moves for a bill of particulars as to Counts Two, Three, and Six. *See*, Def.'s Mot. at 30. Defendant contends that these counts violate Rule 7 because they incorporate various provisions of the New York Penal Law ("NYPL"), but contain no evidence or factual information regarding what conduct allegedly violates those state laws. *Id.* at 33, 36, 38. Specifically, Defendant asserts that the bare factual allegations regarding Hobbs Act extortion charged in Count One and repeated throughout the indictment fail to make out the elements of the underlying NYPL provisions referenced in Counts Two, Three, and Six. *Id.* at 32. Defendant thus maintains that a bill of particulars is required as to the factual assertions the Government presented to the grand jury regarding the NYPL provisions incorporated in these counts. *Id.* at 38.

The Government counters that Defendant's request: (1) improperly seeks to compel the Government to disclose the manner in which the defendant committed the crimes charged; and (2) is unnecessary because the Government already has disclosed "substantial discovery," outlined its theory of the case, and facts supporting that theory are available in numerous court filings. *See*, Opp'n at 33.

Counts Two, Three, and Six charge Defendant with violating the Travel Act. *See*, Indictment, ¶¶ 2, 3, 6. Each of these charges requires, *inter alia*, that the Government prove Defendant acted with the intent to further some unlawful activity. *See*, *United States v. Jenkins*, 943 F.2d 167, 172 (2d Cir. 1991). The indictment alleges that Defendant intended to carry out extortion and coercion, and cites both federal and state law: 18 U.S.C. § 1951(a) (Hobbs Act extortion); NYPL § 135.60 (coercion); NYPL § 155.30(6) (grand larceny in the fourth degree by

extortion); NYPL § 155.40(2) (grand larceny in the second degree by extortion); and NYPL § 155.05(2)(e) (larceny by extortion). *See*, Indictment, ¶¶ 2, 3, 6.[3]

In essence, Defendant's argument is that Counts Two, Three, and Six fail to state a claim as to the NYPL provisions referenced therein. As an initial matter, a motion for a bill of particulars is not the proper vehicle for litigating this issue. "[A]n indictment that is 'defective for failure to adequately allege an essential element' is not rescued by a bill of particulars stating the element.'" *United States v. Thompson*, 141 F. Supp.3d 188, 194 (E.D.N.Y. 2015) (cleaned up). Thus, even if Defendant correctly asserts that Counts Two, Three, and Six fail to state a claim, the appropriate remedy is to seek dismissal of the claims pursuant to Rule 12, not a bill of particulars. *See*, *O'Sullivan*, 2021 WL 1979074, at *2. Yet, Defendant did not seek dismissal of these counts in his Rule 12 motion. *See*, Def.'s Mot. Even construing his argument as one pursuant to Rule 12, it fails for the same reasons stated above. *See*, Section I.D.2., *supra*. Counts Two, Three, and Six each sufficiently track the language of the statute and state the approximate time and place of the alleged crimes, which is all that is required at this juncture. *See*, *Stringer*, 730 F.3d at 124.

Defendant's argument also misconstrues the pleading standards pursuant to Rule 7. An indictment need only allege the "essential facts constituting the offense charged." Rule 7(c)(1). The essential elements of a Travel Act violation are: (1) a person traveled in interstate commerce or used a facility of interstate commerce; (2) with the intent to promote or facilitate the carrying on of an unlawful act; and (3) thereafter performed an additional act in furtherance of such unlawful act. *See*, 18 U.S.C. § 1952(a); *Jenkins*, 943 F.2d at 172. As the Supreme Court explained in *United States v. Nardello*, Congress did not intend for the Travel Act to "incorporate[] state labels for particular offenses," but rather for references to state laws to help identify the generic

[3] Counts Two, Three, and Six also incorporate by reference NYPL § 20.00 (aiding and abetting), but Defendant does not seek a bill of particulars as to this provision. *See*, Def.'s Mot. at 31, n.8.

categories of crime that a defendant is accused of. 393 U.S. 286, 292-96 (1969); *See also*, *United States v. Bagaric*, 706 F.2d 42, 62 (2d Cir. 1983) ("Under RICO, as under the Travel Act, state offenses are included by generic designation. Courts construing the racketeering statutes have found that the references to state law serve a definitional purpose, to identify generally the kind of activity made illegal by the federal statute." (cleaned up)).

Accordingly, the indictment need not allege each of the essential elements of the state law provisions that merely are referenced in a Travel Act charge to fairly inform Defendant of the charges against him. *See*, *United States v. Rittweger*, 259 F. Supp.2d 275, 287-89 (S.D.N.Y. 2003) (denying motion to dismiss where indictment referencing NYPL §§ 180.00 and 180.05 tracked the language of § 1952(a)). Indeed, Defendant is charged with violations of the Travel Act, not the NYPL.

Defendant's reliance on *United States v. Gullett*, a 40-year-old out of circuit case, is misplaced. 713 F.2d 1203 (6th Cir. 1983). There, the defendant challenged three Travel Act counts with identical language as multiplicious due to the inclusion of confusing, overlapping dates in each count. *Id.* at 1211 ("Multiplicity is the charging of a single offense in several counts of the indictment."). The Sixth Circuit ultimately determined that a bill of particulars clarifying the dates applicable to each charge remedied the issue. *Id.* at 1212. Not only does Defendant not advance a multiplicity argument here, but the Sixth Circuit explicitly held that each Travel Act count "unambiguously set[] forth all the elements of a [§] 1952 offense" where the indictment identified: (1) the defendants, (2) the person whom the defendants caused to travel in interstate commerce, (3) the approximate dates in which the travel occurred, (4) the cities involved, and (5) both the underlying unlawful conduct which the defendants furthered: commercial bribery, and the state statute which prohibited such conduct. *Id.* The indictment here sets forth precisely the same

information. Nor did the Sixth Circuit address whether a bill of particulars was needed to elucidate upon the conduct alleged to violate the state statutes referenced in the Travel Act charges.

Ultimately, Defendant's concern of an ambush at trial is unwarranted. As Defendant is not charged with violations of the NYPL provisions referenced in Counts Two, Three, and Six, he is not entitled to a bill of particulars regarding those state statutes. Nor has Defendant demonstrated that he will be prejudiced in the absence of a bill of particulars with respect to the federal Travel Act violations actually charged in Counts Two, Three, or Six. Defendant's request to "identify[] the conduct based on which the grand jury charged" him improperly seeks "the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories." Def.'s Mot. at 41; *Taylor*, 17 F. Supp.3d at 179; *See also*, *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars." (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968)). Moreover, the Government has represented that the "necessary information has been provided to the defense through discovery and other communications." *United States v. Muric*, 2010 WL 2891178, at *1 (S.D.N.Y. July 13, 2010); *See also*, Opp'n at 33-34. Accordingly, Defendant's motion for a bill of particulars is denied.[4]

## III. Motion for Discovery

### A. Legal Standard

"Rule 16 of the Federal Rules of Criminal Procedure governs pre-trial discovery in criminal cases." *United States v. Loera*, 2017 WL 2821546, at *5 (E.D.N.Y. June 29, 2017). "The rule provides, in pertinent part, that a defendant is entitled to obtain from the Government documents and objects that are within the government's possession, custody, or control if they are material to

[4] Defendant contends in a footnote that the NYPL provisions referenced in the indictment are unconstitutionally overbroad because §§ 135.60 and 155.05(e)(2), which are "materially identical," have been held unconstitutionally overbroad by other courts. Defendant's argument fails because, as explained above, Defendant is not charged with violating the NYPL provisions referenced in Counts Two, Three, and Six.

preparing the defense or will be used by the Government in its case-in-chief at trial." *United States v. Scully*, 108 F. Supp.3d 59, 123 (E.D.N.Y. 2015) (internal quotation marks omitted).

"Although Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." *Ragano*, 740 F. Supp.3d at 186 (quoting *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974)). Discovery in criminal cases is limited in comparison to civil cases, and Rule 16 "does not entitle a criminal defendant to a broad and blind fishing expedition among items possessed by the Government on the chance that something impeaching might turn up." *Scully*, 108 F. Supp.3d at 123 (internal quotation marks omitted). "The defendant bears the burden of making a *prima facie* showing of materiality to obtain Rule 16 discovery." *United States v. de la Cruz*, 818 F. Supp.3d 472, 479 (E.D.N.Y. 2026).

Moreover, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Scully*, 108 F. Supp.3d at 124 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). "Rather, *Brady* established that the Government has a constitutional obligation to disclose favorable and material information to the defendant." *Id.* at 124 (quoting *United States v. Delacruz*, 2015 WL 2211943, at *2 (S.D.N.Y. May 12, 2015)).

**B. Application**

Defendant seeks discovery regarding missing recordings between Defendant and the CW of a January 13, 2026, telephone call and a January 29, 2026, in person meeting (collectively, the "Unrecorded Meetings"). *See*, Def.'s Mot. at 41-42. Defendant contends that these conversations are "central" the Government's case, but, for some unknown reason, the conversations were not recorded on the designated recording device (the "Device"). *Id.* at 42. After conferring with the Government, Defendant still seeks information pursuant to Rule 16 and *Brady* regarding the technical specifications and protocols regarding how the Device should have been operated and

chain of custody information. *Id.* Specifically, Defendant seeks: (1) file logs removed from the Device, or, in the alternative, a declaration attesting that, when the Device is connected properly to a computer, the Device is not recognized; (2) FD-302 and FD-1023 reports documenting the FBI's investigative activities and debriefings of CW regarding the Unrecorded Meetings; (3) electronic communications between federal law enforcement related to the Unrecorded Meetings; (4) inserts to federal law enforcement and FBI reports containing information related to the Unrecorded Meetings; (5) handwritten notes of federal law enforcement related to the Unrecorded Meetings; and (6) documents concerning the chain of custody for electronic evidence recovered or attempted to be recovered from the Device and related to the Unrecorded Meetings. *Id.* at 43-44.

The Government counters that: (1) it already has provided Defendant with discovery regarding the Device's "operation failures;" (2) it has complied and continues to comply with its disclosure obligations under *Brady*; (3) Defendant is not entitled to the discovery he seeks pursuant to Rule 16. *See*, Opp'n at 35-37.

As an initial matter, "*Brady* and its progeny do not require the immediate disclosure of all exculpatory material upon a defendant's request. Rather, the government's obligation is to disclose Brady material in sufficient time for its effective use at trial." *Shkreli*, 2016 WL 8711065, at *2. Courts generally deny pretrial discovery requests pursuant to *Brady* where the Government makes a good faith representation that it "recognizes its disclosure obligations under *Brady*, and that it has complied with said obligations and will continue to do so in a timely manner." *Id.* As the Government has made such a good faith representation here, and finding no reason to believe the Government has not complied with its *Brady* obligations, Defendant's pretrial request for discovery pursuant to *Brady* is denied. *See*, Opp'n at 36.

Rule 16(a)(2) "protects from disclosure emails, notes, reports and memoranda made by government agents during the course of an investigation or prosecution." *See*, *United States v. Lambus*, 2016 WL 4536867, at *2 (E.D.N.Y. Aug. 30, 2016) (citing Rule 16(a)(2)). Accordingly, Defendant's requests for FD-302 and FD-1023 internal reports, electronic communications between federal agents, inserts to federal law enforcement reports, and all handwritten agent notes are denied.

With respect to the file logs of the Device and documents concerning the chains of custody for electronic evidence recovered, Defendant maintains that such information is "crucial to [his] defense" because the Government "relies heavily on alleged statements" from the Unrecorded Meetings, and the documents are necessary to "challenge the [G]overnment's version of the conversations on January 13 and January 29." Def.'s Mot. at 42.

"The materiality standard of Rule 16 normally is not a heavy burden." *United States v. Urena*, 989 F. Supp.2d 253, 261 (S.D.N.Y. 2013) (cleaned up). "Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule merely because the government may be able to use it to rebut a defense position." *United States v. Grinin*, 734 F. Supp.3d 219, 223 (E.D.N.Y. 2024). However, there is "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 106 (1976)).

While the information Defendant seeks may be relevant to his defense, the Government already has turned over substantial discovery, including: (1) an FBI report summarizing attempts to retrieve data from the Device; (2) a report prepared by Adaptive Digital Services, Inc. ("ADS"), the Device's manufacturer, summarizing results of a test performed by ADS on the Device; and (3) additional details pertaining to attempts by the FBI and ADS to retrieve recordings from the

Device, "including identification of potential human errors or equipment malfunctions in connection with the Device." *See*, Opp'n at 35-36. Moreover, Defendant does not explain how or why the information he seeks is material, other than generally claiming that it is necessary to challenge the Government's version of events. Against the backdrop of discovery already produced, the additional information Defendant seeks is overbroad. *See*, *Scully*, 108 F. Supp.3d at 123.

Moreover, Defendant's requests were sent to the Government on June 12, 2026, just two weeks before the instant motion was filed. "[T]he Court will not order relief when Defendant made [his] requests just before filing the instant motion because the Government did not have an adequate opportunity to respond." *Grinin*, 734 F. Supp.3d at 227. Accordingly, Defendant's discovery motion is denied at this stage.

## **CONCLUSION**

For the reasons set forth above, Defendant's omnibus motion is denied in its entirety. However, with respect to Defendant's motion to dismiss the indictment, to the extent that the Court has deemed certain arguments to be premature, the dismissal is without prejudice to renew at the appropriate time.

SO ORDERED.

Dated: Brooklyn, New York
October 26, 2026

/s/

DORA L. IRIZARRY
United States District Judge